# Ollinger & Bruce Dry Dock Co. *v.* Tunstall.

*Breach of Contract.*

(Decided Dec. 17, 1908. Rehearing denied Jan. 14, 1909. 48 South. 482.)

1. *Sales; Construction of Contract; Option.*—Where the contract specified the payment of a certain sum with the option, on the payment of a further sum within a specified time, that plaintiff would sell defendant a vessel, etc., but that if defendant failed to exercise the option the cash payment should be retained as rent for the vessel, etc., and defendants should owe plaintiff nothing more, a retention of the cash payment by the plaintiff released the defendant from any further obligation for the breach of any conditions of the agreement.

[Ollinger & Bruce Dry Dock Co. v. Tunstall.]

2. *Same; Option Contract; Action for Breach.*—Under a contract providing for a cash payment, and an option to purchase a vessel upon a further cash payment within a given time, and providing that in the event the option was not exercised within the time, the cash payment already made should be retained as rent, etc., and that the defendant should owe plaintiff nothing more, a suit by a plaintiff, upon defendant's failure to elect to purchase within the specified time, for defendant's failure to order necessary repairs on the vessel, to pay over its earnings, etc., coupled with the allegation that notwithstanding the breaches of the agreement, the parties agreed that it should remain in force and that the defendant waived the provision that the contract should cease on his failure to perform his obligations thereunder, does not show such a change in the provision of the original agreement, that the defendant should be held beyond the sums paid under the original agreement on defendant's breach of the contract.

APPEAL from Mobile Circuit Court.

Heard before Hon. SAMUEL B. BROWNE.

Action by the Ollinger & Bruce Dry Dock Company against Peyton R. Tunstall. From a judgment for defendant, plaintiff appeals. Affirmed.

GREGORY L. & H. T. SMITH, for appellant. Under the contract, a sale took place.—*Fullenwider v. Rowan,* 136 Ala. 303. The provisions for the forfeiture of the contract upon the failure of one party to peform his duty are intended for the benefit of the other party and not to permit the defaulting party to take advantage of his own wrong.—*Comer v. Bankhead,* 70 Ala. 141; *Sprague v. Morgan,* 7 Ala. 952; *Eads v. Murphy,* 52 Ala. 520; *Borst v. Simpson,* 90 Ala. 373; *Weaver v. Lapsley,* 42 Ala. 609; 23 Mich. 260; 13 Atl. 39; 101 Ia. 196; 32 Atl. 467; 72 Pac. 978. Even if Tunstall had the right to declare a forfenture, he could waive this right.—*Acker v. Bender,* 33 Ala. 230; *Walling v. Thomas,* 133 Ala. 430. While the written contract expressly imposes on Tunstall the duty to do the things for the failure to do which this suit is brought, the parties by their acts construed the contract to be such as is alleged in the amended complaint, which they had the right to do.—*Badders, et al. v. Davis,* 88 Ala. 367; *Robinson v. Bullock,* 66 Ala. 548.

[Ollinger & Bruce Dry Dock Co. v. Tunstall.]

The provision in the contract is that the repairs should be made under orders of Tunstall and at his expense, and in no other manner.—*Huckabee v. Andrews,* 34 Ala. 651; *Horner v. Chicago, etc.,* 38 Wis. 165.

PILLANS, HANAW & PILLANS, and MCALPINE & ROBINSON, for appellee. Courts construe contracts but do not make them.—*Keble v. Keble,* 85 Ala. 552. The agreement in the contract is valid and plain, and must be construed as written.—*Keble v. Keble, supra; McCurry v. Gibson,* 108 Ala. 451; *Eakin v. Scott,* 70 Tex. 442; 72 Pac. 144; 67 N. E. 58; 70 S. W. 458; 29 S. W. 468.

McCLELLAN, J.—The appellant, plaintiff below, was the owner of a vessel named "City of Camden;" and with reference to which it and appellee contracted, in writing, in substance as follows: Appellee paid appellant the sum of $5,000, and consideration inducing such cash payment is stated, in the contract, to have been (1) that appellant, upon the request of appellee. at any time within 12 months from the date of execution of the agreement, would sell and convey to appellee the vessel named for the sum of $4,440, with interest thereon at the rate of 6 per cent. to be paid in cash at the time of making said request, and that, upon the payment of said sum to it, appellant would make a good and sufficient bill of sale of the vessel to appellee; (2) that in the event appellee desired an extension of time for another 12 months he had the option to do so; (3) "In the event that the said Peyton R. Tunstall, Jr., shall fail to pay to the Ollinger & Bruce Dry Dock Company the said sum of four thousand four hundred and forty dollars ($4,440.00) as provided by this agreement, with interest, or shall fail to keep and perform any other obligation in this instrument agreed by him, then this

agreement shall cease and determine, and the said Ollinger & Bruce Dry Dock Company shall have the right to retain the said sum of five thousand dollars (5,000.00), and any part of the said sum of four thousand four hundred and forty dollars ($4,440.00) that shall have been paid as compensation for being deprived of the right to otherwise sell and dispose of said steamboat during said period, and as rent for said steamboat during said period, and said Peyton R. Tunstall, Jr.,*shall owe the said corporation nothing more"* (italics supplied). (4) That appellee had the right to operate said vessel without charge for its use, but, if he did not so desire, there should be no wharfage charges for the use of appellant's wharf for the vessel, "and during the time said steamboat is not being operated the said Peyton R. Tunstall, Jr., is to keep a watchman on her day and night at his expense;" (5) that appellee should pay 6 per cent. interest on said deferred payment so long as said payment was unsettled, and appellant should receive each month, during the time, or extension thereof, of the agreement, the net earnings of the vessel from whatever source the same was derived until the said deferred payment, with interest, was paid; (6) that in the event it became necessary to make repairs on the vessel, during the life of the contract, such repairs should only be made on an order from appellee to appellant instructing it to have the repairs made, and appellee should pay the expense thereof. There were a few other provisions in the contract not now necessary to be considered. It does not appear that appellee elected, during the period specified, to buy the vessel.

The several counts of the original complaint are predicated upon alleged breaches accruing by the failure of appellee (1) to pay the interest stipulated, (2) to or-

der the necessary repairs, (3) to maintain the watch specified, (4) to pay the earnings of the vessel to appellant.

The demurrers take the point that, by the letter of the contract, the retention by appellant of the sums mentioned in the contract should entirely exonerate the appellee from any further or other obligation to the appellant for a breach of any or all of the conditions of the agreement. It is hardly necessary to say that such is the express and plain provision of the original agreemnt made by the parties. We have quoted and italized the instrument in this special particular. There is no room for construction or interpretation; the original agreement being, in this respect, entirely unequivocal.

After the demurrers were well sustained to the original counts, they were amended. The first four (numbered) amendments allege, in substance, that notwithstanding breaches of the agreement the parties did not rescind the contract, but on the contrary, appellee insisted upon its performance by the appellant. The last two (numbered) amendments, 5 and 6, allege, respecetively, in substance: (1) That subsequent to the execution of the contract the parties agreed that the instrument should be construed and understood to the effect that the contract should remain in force, and that each party should be bound to the other to do and perform those things which were stipulated therein to be done by both, respectively, notwithstanding appellee had breached the contract; (2) that appellee waived the provision of the contract that it should cease and determine on account of the failure of the appellee to perform his obligations thereunder, and this, notwithstanding appellee had breached the contract as complained.

12—8

It is too evident for that, in order for the appellee to avoid effect, plainly expressed, of the exonerating of appellee from further liability provision of the original contract, the parties must have done something more than merely fail to rescind it for the breaches asserted or more than waive its rescinding, or more than insist upon its performance after breach, or more than agreed that, notwithstanding the breaches, they should each be bound to do those things provided, in the original instrument, each should do. Every one of the conditions, acts or agreements set forth in the amendments is perfectly consistent with the continued efficacy, unimpaired in any degree, of the exonerating provision of the original agreement. In other words, there is averred in the amendments no subsequent agreement or act or waiver that operated, directly or indirectly, to strike from the original agreement the exonerating provision. There is nothing so averred that denuded the appellant of the right to retain, upon the conditions stated, the funds specified in the original agreement, nor, on the other hand, that denuded the appellee of the right to stand exempt, from the consequences of any breach committed by him, from further liability than the retention by appellant of those specified funds or sums. It might well be that the parties agreed to a continuance of the contract's binding qualities, notwithstanding its breach, and still the consequences of the breaches, viz., exemption from liability therefor, would not be altered. Indeed, the very act or agreement for a continuance of the contract, whatever the necessity for, or inducement to, the subsequent agreement operated, unless otherwise stipulated by the parties, to clothe each other with the rights each had under the original, yet breached, contract.

It results that, so far as the exonerating provision is concerned, the acts, waivers or agreements stated in the

[Polytinsky v. Stewart.]

amendments had no effect—were not so intended by the parties—to change that provision of the contract.

The demurrers to the amended counts were correctly sustained, and the judgment is affirmed.

Affirmed.

TYSON, C. J., and DOWDELL and ANDERSON, JJ., concur.